IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 8:08CR183 |
| vs. ) | |
| ) | ORDER |
| CHRISTINE McGLOTHLEN, ) | |
| ) | |
| Defendant. ) | |

An evidentiary hearing was held July 29, 2008 on the defendant's Motion for Discovery [17] and the government's Motion for Reciprocal Discovery [27]. The defense seeks access to certain records pertaining to the credentials, training, and handling of a drug detection dog. The government requests reciprocal discovery regarding an expert retained by the defendant.

At the conclusion of the July 29 hearing, the defense was directed to file an amended motion making specific requests for discovery, with pinpoint citations to the record as to the availability of the information sought. The hearing transcript [34] was filed on August 5, 2008, and defendant timely filed an Amended Motion for Discovery [35]. The final post-hearing brief was filed on August 28, 2008, at which time the motions were deemed submitted.

## BACKGROUND[1]

The defendant/movant, Christine McGlothlen, was a passenger in a vehicle driven by codefendant, Ronald Prokupek. Nebraska State Trooper K. Estwick stopped the

---

[1] This factual background is taken from the defendant's briefs (Filings 18 & 25) and is intended only to provide context for the parties' arguments.

vehicle for failing to signal its turn from an off-ramp on Interstate 80. According to Trooper Estwick's report, when asked if he had any form of identification, Prokupek "stated 'No' in a very agitated voice." When asked to step out of the vehicle, Prokupek reportedly "exited the vehicle in a very aggressive manner." After issuing Prokupek a citation, Estwick asked whether Prokupek was transporting anything illegal in the vehicle. Prokupek said he was not. When Estwick asked again, Prokupek reportedly responded, "I'm not claiming anything in that vehicle." The vehicle in question was registered to McGlothlen.

Trooper Estwick described McGlothlen as being "very agitated." When asked about her destination, McGlothlen reported they had been at Scheels Sporting Goods in Lincoln and were headed to Shelby; however, Prokupek said they had been at a friend's house looking at a four-wheeler.

After Prokupek and McGlothlen both refused to allow Trooper Estwick to search the vehicle, Estwick requested Sgt. Lonnie Connelly to deploy a canine, named "Rocky," to sniff the exterior of the vehicle. Estwick's report states that he searched the defendants' vehicle after Sgt. Connelly reported that Rocky "had a positive indication" for drugs in the vehicle.

The officers relied upon Rocky's behavior while sniffing the vehicle as probable cause to conduct a warrantless search. Although this encounter was videotaped, defendant advises that neither Sergeant Connelly's handling of Rocky nor Rocky's behavior is clearly depicted on the video.

Defendant advises that her retained expert, Steven Nicely, would testify that "the limited documentation produced creates serious concerns about Rocky's reliability and that additional documentation is necessary to make a fair determination."  (Filing 25 at p. 5/8).

**DISCUSSION**

"Assuming that the dog is reliable, a dog sniff resulting in an alert on a container, car, or other item, standing alone, gives an officer probable cause to believe that there are drugs present."  *United States v. Donnelly*, 475 F.3d 946, 955 (8th Cir.), *cert. denied*, 127 S. Ct. 2954 (2007).  In this case, it appears that the government must rely on the dog's indication to establish probable cause to search the defendant's vehicle.  The defendant seeks discovery to challenge the dog's reliablity for purposes of establishing probable cause.

The precedent within this court is to allow at least some discovery on this issue. *See United States v. Dix*, 2007 WL 3046347, No. 4:07CR3107 (D. Neb., Oct. 17, 2007). As Magistrate Judge Piester observed in *Dix*, the case law suggests that once a dog is found to be certified, the dog may be presumed to be well trained and reliable; however, the court must make its probable cause determination on the totality of the circumstances, which may include information bearing on the dog's reliability.

In determining the scope of discovery in this instance, I have considered the thoughtful analysis provided in *United States v. Outlaw*, 134 F. Supp. 2d 807, 812-14 (W.D. Tex. 2001).  In that case, the court initially observed that an alert by a drug dog did not, *per se*, establish probable cause; rather, a canine alert by a properly trained dog was prima facie proof that the officer had probable cause for a search or seizure.  Thus, "the

government need only prove that the canine unit was trained and certified in order to prove the reliability of the canine alert so as [to] establish probable cause." 134 F. Supp. 2d at 812. The defendant could still challenge the reliability of the "canine inspection," but had the burden of showing that in the totality of the circumstances, the dog's alert was unreliable and insufficient to establish probable cause. *Id*.

Under the Eighth Circuit's decision *United States v. Donnelly,* a positive alert by a reliable drug detection dog constitutes proof of probable cause. Citing similar authority, the court in *Outlaw* reasoned,

> Underscoring these decisions is the requirement that the canine and handler team have successfully completed a minimum level of drug detection training and that the team possess a certain level of reliability. Under such circumstances, a handler can reasonably conclude that contraband items will be found based on a canine alert because such "dogs are trained to alert-take a particular position or stance-only when they detect such contraband or people." [Citations omitted.] Rather than adopting a bright line rule that a canine alert automatically establishes probable cause, the majority of circuits recognize a defendant's right to challenge the training and reliability of canine inspection teams.
>
> In addition, foreclosing a defendant's right to challenge the reliability of a canine alert runs counter to the reality that, though highly accurate, canine inspections are not infallible means of detecting the presence of contraband items.... The reliability of the canine alert depends significantly on the ability and reliability of the human handler. As such, it is susceptible to human errors.

*United States v. Outlaw*, 134 F. Supp. 2d at 813 (citations omitted). The court further noted that a dog's alert "is not always an objectively verifiable event. In some instances, an alert is simply an interpretation of a change in the dog's behavior by a human handler." *Id*. *See also United States v. Rodriguez*, 2008 WL 2401494 at *10, No. 4:08CR3024 (D. Neb., June 10, 2008).

The Texas court concluded:

> The Court recognizes that generally a canine inspection by a properly trained dog and handler is one of the most accurate methods of detecting concealed contraband items. *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (recognizing canine alerts by trained dogs as one of the most reliable forms of drug detection). However, the possibility of error exists and, in limited circumstances, the error may be of such magnitude that a canine alert is not sufficient to establish probable cause. For instance, it stretches the bounds of jurisprudential imagination to believe that a positive alert by an untrained dog or by a dog with an extensive history of false positive alerts could be relied upon to establish probable cause without raising Fourth Amendment concerns. Accordingly, though this Court believes that the Border Patrol agents of the Western District are among the most competent and most fair-minded law enforcement officers in the nation, the Court is reluctant to fashion a holding that bars future defendants from raising the possibility of such errors or that creates the potential for a declaration of a "canine alert" to become a conduit for suspicionless and warrantless searches and seizures.

*Id*. at 213-14.

Similar concerns were recently raised in *United States v. Rodriguez*, 2008 WL 2401494 at *11, in which Magistrate Judge Piester and District Judge Kopf held that there was insufficient evidence to support a finding that a drug detection dog alerted or indicated to the scent of illegal drugs in the defendants' vehicle.

The scope of discovery on this issue is also governed by Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure, which provides:

> **Documents and Objects.**
> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
> (i)   the item is material to preparing the defense;
> (ii)  the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to the defendant.

The defendant has specified in her Amended Motion [35] the materials which she contends are material to preparing her defense. Considering the testimony of Sgt. Connelly, the court finds that all of the requested materials are within the government's possession or control. The court further finds that the following items are relevant and material and should be produced to the defense pursuant to Fed. R. Crim. P. 16(a)(1)(E):

1. The handler's manual and trainer's manual incorporating the certification, training, and deployment standards of the International Congress of Police Service Dogs;

2. Training forms (titled "Police Service Dog Training Documentation") from March, 2006 through March, 2007[2];

3. Deployment Forms (titled "Police Service Dog Reports") from March, 2006, through March, 2007;

4. Drug detector dog grade sheets from March, 2006 through March, 2007;

5. All supervisor observation forms ("SOF's") related to Sergeant Connelly in his capacity as a dog handler from March, 2006 through March 2007; and

6. The Nebraska State Patrol police service dog policies and standard operating procedures in effect on the date of the traffic stop.

### ORDER

**IT IS ORDERED:**

1. Defendant's Motion for Discovery [17] and Amended Motion for Discovery [35] are granted, in part, and the government shall produce the following materials no later than the close of business on **October 24, 2008** if it has not already done so:

---

[2] *See United States v. Lambert*, 351 F. Supp. 2d 1154, 11623 (D. Kan. 2004) (defendant was entitled to discovery of dog's training and certification records for the year prior to the date of the search).

    a.    The handler's manual and trainer's manual incorporating the certification, training, and deployment standards of the International Congress of Police Service Dogs;

    b.    Training forms (titled "Police Service Dog Training Documentation") from March, 2006 through March, 2007;

    c.    Deployment Forms (titled "Police Service Dog Reports") from March, 2006, through March, 2007;

    d.    Drug detector dog grade sheets from March, 2006 through March, 2007;

    e.    All supervisor observation forms ("SOF's") related to Sergeant Connelly in his capacity as a dog handler from March, 2006 through March 2007; and

    f.    The Nebraska State Patrol police service dog policies and standard operating procedures in effect on the date of the traffic stop.

2. The government's Motion for Reciprocal Discovery [27] is granted to the extent that the defendant shall disclose to the government all information designated in Fed. R. Crim. P. 16(b)(1)(C) (governing the scope of a defendant's expert witness disclosures), but only if the government fully complies with paragraph 1, above.

Pursuant to NECrimR 57.2, a party may appeal this order by filing an "Appeal of Magistrate Judge's Order" within ten (10) business days after being served with the order. The party shall specifically state the order or portion thereof appealed from and the basis of the appeal. The appealing party shall file contemporaneously with the statement of appeal a brief setting forth the party's arguments that the magistrate judge's order is clearly erroneous or contrary to law. **The filing of a statement of appeal does not automatically stay the magistrate judge's order pending appeal.** *See* NECrimR 57.2(d).

**DATED October 3, 2008.**

                                          **BY THE COURT:**

                                          **s/ F.A. Gossett**
                                          **United States Magistrate Judge**